# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **1. WU XIU LIN,** | ) | **ATTORNEY LIEN CLAIMED** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.:** |
| | ) | |
| **2. XIAO DONG TANG,** | ) | |
| aka **ANDY TANG** | ) | |
| **and** | ) | |
| **3. TGL AIR CONDITIONING LLC** | ) | |
| **2600 S. Meridian Ave.** | ) | |
| **Oklahoma City, OK 73108** | ) | **Judge:** |
| **Defendants.** | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, **WU XIU LIN**, by and through her attorneys of record, Brian R. Glass, and Cameron J. Glass of the **LAW OFFICE OF GLASS, WOOD, WANG & ASSOCIATES**, and for her cause of action against Defendant, **XIAO DONG TANG,** aka **ANDY TANG** and **TGL AIR CONDITIONING, LLC**, and hereby alleges upon personal knowledge and information and belief as follows:

## THE PARTIES

1.    Plaintiff Wu Xiu Lin is an adult individual who is a resident of Oklahoma City, Oklahoma, and has worked as an hourly, non-exempt Office Clerk for Defendants since April 11, 2023 and throughout the relevant time period.

2.    Defendant TGL Air Conditioning LLC (hereinafter "TGL,") is an Oklahoma limited liability company with its principal place of business located in Oklahoma City.

3.    Defendant, Xiao Dong Tang, aka Andy Tang, is the owner, operator, and manager of TGL.

4.    At all relevant times, Plaintiff and other similarly situated individuals were Defendants' "employees" as the term is defined by the FLSA.

5.    At all relevant times, Defendants were, and are, "employers" as the term is defined by the FLSA.

6.    Plaintiff is informed and believes, and based upon such information and belief alleges, that the Defendants, and each of them, are now and/or at all times mentioned in the Complaint were in some manner legally responsible for the events, happenings and circumstances alleged in the Complaint.

7.    Plaintiff is further informed and believes, and based upon such information and belief alleges, that at all times herein mentioned, all Defendants, and each of them were and are the agents, servants, employees, joint venturers, alter egos and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of said employment and/or agency; furthermore, that each and every Defendant herein, while acting as a high corporate officer, director and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed and ratified each and every action taken by the other co-Defendants, as herein alleged and was responsible in whole or in part for the matters referred to herein.

8.      Plaintiff is further informed and believes, and based upon such information and belief alleges, that at all times herein mentioned, Defendants, and each of them proximately caused Plaintiff, and all other similarly situated and the general public to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

9.      Plaintiff is further informed and believes, and based upon such information and belief alleges, that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint venture, partnership and common enterprise, and were action within the course and scope of, and in pursuit of said joint venture, partnership and common enterprise and, as such were co-employers of Plaintiffs and the putative class herein.

10.     Plaintiff is further informed and believes, and based upon such information and belief alleges, that Defendants, and each of them, at all times mentioned in this Complaint, concurred with, contributed to, approved of, aided and abetted, condoned and/or otherwise ratified, the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

11.     Plaintiff is further informed and believes, and based upon such information and belief alleges, that Andy Tang made all decisions on a daily basis regarding pay policies and exerted financial and operative control of TGL and is therefore individually liable under FLSA and Oklahoma law.

## JURISDICTION AND VENUE

12.    This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et. seq.*

13.    Defendants employed Plaintiff and employs/employed others in this judicial district, owns and is registered to transact business in the State of Oklahoma.

14.    The claims for violation of the Oklahoma Labor and Employment Act are based on the statutory law of the State of Oklahoma. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim.

15.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## COVERAGE ALLEGATIONS

17.    At all times hereinafter mentioned, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18.    At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

19.    At all times hereinafter mentioned, Defendants have been an enterprise

engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

20.     At all times hereinafter mentioned, Plaintiffs have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

21.     At all times hereinafter mentioned, Plaintiff was individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

22.     At all times hereinafter mentioned, Defendants have been an employer within the meaning of 40 O.S. § 1-201.

23.     At all times hereinafter mentioned, Plaintiffs were employees within the meaning of 40 O.S. § 1-201.

24.     This is also an action for sex harassment and retaliation arising under Title VII of the Civil Rights Act of 1964 ("Title VII").

25.     Plaintiff claims that during her employment with TGL she was subjected to unwelcome conduct of a sexual nature from Defendant Mr. Tang which was sufficiently severe or pervasive to create a hostile work environment, and when she rebuffed and

rejected the sexual advances Mr. Tang caused Plaintiff to terminate her employment. Plaintiff claims that Defendant is strictly liable for the sexually harassing and abusive conduct of its executive level employee that resulted in a tangible employment action.

## STATEMENT OF FACTS

26.     Defendants control, own and/or operate TGL that installs and repairs air conditioning units across Oklahoma with an identified principal office street address of 2600 South Meridian Ave. Oklahoma City, Oklahoma.

27.     On or about April 9, 2023, Defendant Tang orally offered the "Office Clerk" position, paying $5000.00 per month. Duties to include data entry, miscellaneous paperwork for the office and filing documents for his company, Defendant TGL.

28.     On or about April 11, 2023, Plaintiff was hired at TGL as an Office Clerk. She drove from Arizona to Oklahoma City to begin work.

29.     Upon arriving at TGL Plaintiff was required to return a car borrowed by Mr. Tang then pick up a business associate nicknamed "92."

30.     The following day, April 12, 2023, Plaintiff had not been allowed to rest, and drove an additional 160 miles to various farms. On this date, Plaintiff met Mr. Chen who commented that she should be allowed to rest due to fatigue.

31.     Plaintiff worked on average eighteen (18) hours per day. After business work was done Plaintiff was required to cook and clean for Mr. Tang.

32.     Plaintiff routinely used her personal car to transport heavy air-conditioning pipes and equipment.

33.    Plaintiff was consistently required to work past 11:00 p.m., after having arrived at work early in the morning.

34.    Plaintiff informed Defendant multiple times that the hours required were illegal.

35.    Plaintiff was required to be on call 24/7.

36.    On or about April 18, 2023, Plaintiff went to Southern Oklahoma Chinese Baptist Church and spoke to sister Lu Yuan. Plaintiff told Sister Yuan that she felt like she was living in hell. During this trip, Mr. Tang called Plaintiff to curse and humiliate her on speaker phone in front of Sister Yuan.

37.    During this time Plaintiff became aware that Mr. Tang had a red warrant issued for his arrest in China.

38.    In the following weeks Plaintiff drove Mr. Tang to several farms per day, on these trips Mr. Tang would inappropriately touch Plaintiff while she was driving. Plaintiff informed Mr. Tang that was sexual harassment and informed an elder.

39.    Around April 22, 2023, Mr. Tang forcefully dragged Plaintiff into a back room and attempted to rape her.

40.    On one occasion Mr. Tang injured his head and forced Plaintiff to drive him to the hospital at 9:00 P.M. Later Mr. Tang woke Plaintiff up to clean his wound at 2:00 A.M.

41.    In May of 2023 Mr. Tang kept demanding and threatening that I become his girlfriend.

42.    Plaintiff refused and rebuffed Mr. Tangs' demands because Plaintiff knew Mr. Tang was involved with three other women.

43.    Later in May of 2023, Mr. Tang raped Plaintiff for the first time.

44.    Mr. Tang raped Plaintiff multiple times over the following months until Plaintiff left.

45.    During this time, Plaintiff discovered Mr. Tang had defrauded and scammed numerous individuals.

46.    Around July of 2023 Plaintiff confronted Mr. Tang because she had not been paid for any of her time at TGL.

47.    Defendant stated he needed to first repay all the people he defrauded before he could pay Plaintiff.

48.    Plaintiff remained at TGL under promises of payment. During this time Plaintiff was continually raped and feared if she left she would be seriously injured and publicly shamed.

49.    Mr. Tang publicly claimed that he and Plaintiff were married in order to gain client trust, make business deals, and defraud additional people.

50.    On or about the beginning of November Plaintiff learned that Mr. Tang had lost a lawsuit in Saipan because he had attempted to scam a woman out of her money.

51.    Plaintiff left work at TGL on November 4, 2023.

52.    Throughout this time Plaintiff had no income and her personal car payments had become overdue.

53. Plaintiff's physical and mental health deteriorated drastically throughout her time at TGL.

54. Immediately upon leaving TGL, Mr. Tang began spreading false rumors that Plaintiff had stolen his money and left, despite the fact that Plaintiff was never paid for her time at TGL.

55. Mr. Tang contacted multiple people known to Plaintiff and Defendant, slandering Plaintiff and threatening people not to help Plaintiff.

56. Mr. Tang sabotaged multiple job opportunities for Plaintiff and was attempting to force her out of Oklahoma.

57. Due to the severe physical and psychological injuries inflicted by Defendant, Plaintiff was unable to work for the remainder of 2023 and much of 2024.

58. Plaintiff was unable to find work until September of 2024 due to Defendant's spreading of false information throughout the community.

59. Plaintiff had to borrow money from a friend to be able to escape Mr. Tang's control.

60. Due to Defendant's actions, Plaintiff suffered severe emotional trauma which manifested into physical ailments, including insomnia, anxiety, depression.

61. Defendant withheld Plaintiff's tax information and Plaintiff was unable to file taxes for the year of 2023.

62. Upon information and belief Plaintiff can call over thirty (30) witnesses to testify to the allegations in this complaint.

## COUNT I

### Failure To Pay Overtime Wages Under FLSA

63.    Plaintiff realleges and incorporates all preceding paragraphs.

64.    Under Title 29 U.S.C. §207, the FLSA requires employers to pay non-exempt employees 1.5 times the employee's regular rate of pay for all hours worked in excess of forty (40) hours during any workweek.

65.    During all relevant times, Defendants qualified as an employer under the FLSA.

66.    Plaintiff was a non-exempt employee of Defendants covered by the Title 29 U.S.C. § 203(e)(1) of the FLSA, which states that an employee "means any individual employed by an employer," and that an employer "includes any person action directly or indirectly in the interest of an employer in relation to an employee."

67.    Defendants required Plaintiff to attend mandatory meetings, be "on-call" during various times of their employment and work well past 8 hours a day. Plaintiff was entitled to be compensated for the time associated with these activities. Defendants', however, failed to track and pay Plaintiff for all of the time spent over 40 hours per week.

68.    Defendants failed to pay Plaintiff overtime pay (at 1.5 times the employee's regular rate) for hours worked in excess of 40 during a workweek.

69.    As a result Plaintiff suffered damages as they were not paid overtime wages for all hours actually worked in excess of 40 during a workweek.

70.    Plaintiff seeks compensation for Defendant's unlawful conduct

71.    Under Title 29 U.S.C. §§ 207 and 216(b), Plaintiff is entitled to recover the full amount of unpaid overtime wages, liquidated damages, interest thereon, reasonable attorney's fees and the costs of suit.

## COUNT II

### Failure To Pay Wages When Due

72.    Plaintiff realleges and incorporates all preceding paragraphs.

73.    The Failure to Pay Wages claim arises from Defendant's policy and practice of failing to pay Plaintiff for the time she spent at TGL in violation of 40 O.S. § 165.2 and 40 O.S. § 197.

74.    The Oklahoma violations occurred when the Defendants failed to compensate the named Plaintiff for each hour worked

75.    Defendants did not pay all wages due when those wages were due to Plaintiff for compensable work time that the Defendants allowed, suffered, and/or required Plaintiff to work for Defendants.

76.    Defendant failed to pay, and failed to timely pay, all wages earned by Plaintiff on her regularly scheduled paydays, including the next regular payday following the separation of Plaintiff's employment.

77.    Defendants' conduct was willful. Defendants knew or showed reckless

disregard as to whether their conduct was prohibited by the Oklahoma law and its accompanying regulations.

78.     Plaintiff is entitled to damages from Defendants, jointly and severally, in the amount of the unlawful deductions, plus liquidated damages in the same amount and costs and attorney's fees.

## COUNT III

### Illegal Retaliation

79.     Plaintiff realleges and incorporates all preceding paragraphs.

80.     Subsequent to Plaintiffs' departure from TGL due to the numerous reasons listed in this Complaint, the Defendants retaliated against the Plaintiff by spreading false rumors through numerous associates that Plaintiff had stolen all of Defendants money and left.

81.     The Defendant's associates circulated this false information to Plaintiff's coworkers, clients, and the community at large. The defendants encouraged (or at least did not discourage) the spreading of this false information.

82.     The identities of each and every person to whom the false statement was published is unknown at this time, but the identities of members of the public to whom these false statements were published will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

83.     The baseless rumors against the Plaintiff are the result of, and retaliation for, plaintiffs' activities which are protected by the FLSA

84.    The purpose of terminating and spreading rumors regarding the plaintiffs is to thwart enforcement of the FLSA's basic guarantees and to bar the plaintiffs' access to statutory remedial mechanisms of the FLSA. Furthermore, the purpose of spreading rumors regarding the plaintiffs is to thwart the plaintiffs' ability to find similar employment and to cause financial harm to the Plaintiff.

85.    The persons who heard and/or saw the aforementioned false statements reasonably understood the statements to be about the plaintiff.

86.    The false statements were not privileged.

87.    The false statements constitute defamation per se because the language used is susceptible of but one meaning: an opprobrious one which accuses the plaintiff of criminal activity.

88.    The false statements exposed the plaintiff to public hatred, contempt, ridicule, and embarrassment; because the public has a common hatred and contempt for individuals accused of or associated with stealing property. The false statements about the plaintiff allegedly stealing money from the defendants were embarrassing because individuals falsely accused of stealing must bear the burden of ridicule associated with such a crime.

89.    The defendant's associates knew the statements to be false, or did not exercise the care which a reasonable careful person would use under the circumstances to determine whether the statement made, including the allegation of theft, was true or false.

90.    As a result of the false statements, the plaintiff has suffered a financial loss in the form of lost wages, damage to plaintiffs' reputation, and the plaintiff has suffered emotional distress as a result of the false statements.

91.    Plaintiff was unable to find work until September of 2024 due to Defendant's spreading of false information throughout the community.

92.    Defendant withheld Plaintiff's tax information and Plaintiff was unable to file taxes for the year of 2023.

## COUNT IV

### Sexual Harassment

93.    Plaintiff realleges and incorporates all preceding paragraphs.

94.    During her employment with Defendant, Plaintiff was subjected to unwelcome conduct of a sexual nature because she is female. The conduct was sufficiently severe or pervasive to create a hostile work environment.

95.    Defendant is strictly liable for the sexually harassing conduct of its supervisor that resulted in a tangible job detriment.

96.    As a direct and proximate result of the sexual harassment inflicted on Plaintiff because of her sex, Plaintiff suffered injuries and damages, including but not limited to, loss of earnings and benefits, bodily harm, mental anguish, upset, worry, physical and emotional distress, and loss of enjoyment of life.

97.    Defendant's acts and omissions with respect to the hostile work environment created by the conduct of Mr. Tang were willful, wanton and intentional, evidencing a

reckless disregard for the federally protected rights of Plaintiff, thereby warranting the imposition of punitive damages.

98.    Plaintiff was also sexually assaulted numerous times by Defendant during her time TGL further showcasing a willful, wanton and intentional, evidencing a reckless disregard for the federally protected rights of Plaintiff, thereby warranting the imposition of punitive damage

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, demands the following relief:

a) that this Court award Plaintiff all of her actual damages, including back pay, lost past and future earnings, and lost past and future benefits in an amount to be determined at trial;

b) that this Court award Plaintiff damages to compensate for her bodily injury, mental, emotional, and physical distress and suffering sustained as a result of Defendant's conduct;

c) An Order awarding the costs of this action;

d) An Order awarding reasonable attorneys' fees;

e) A declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the overtime

requirements of the FLSA;

f) that this Court award Plaintiff punitive damages in an amount to be

determined at trial;

g) An Order awarding prejudgment and post-judgment interest at the highest

rates allowed by law; and

h) An Order granting such other and further relief as may be necessary

and appropriate.

Respectfully submitted,

_____s/Cameron J. Glass_____
Brian R. Glass, Esq., OBA #34217
Cameron J. Glass, Esq., OBA #36124
Law Office of Glass, Wood, Wang & Assoc.
10400 Vineyard Blvd, Ste G100
Oklahoma City, OK 73120
(405) 849-5145
attorneybrianglass@gmail.com
*Attorneys for Plaintiff*

**ATTORNEY LIEN CLAIMED**                    **JURY TRIAL DEMANDED**